UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SKYY PAUL,

                Plaintiff,

-against-

UNIVERSAL PROTECTION SERVICE, LLC d/b/a
ALLIED UNIVERSAL SECURITY SYSTEMS,
RICARDO RIVERA, in his individual capacity,
LIONEL MCLAUGHLIN, in his individual capacity,
RAY CORCHABO, in his individual capacity,
PAUL WILLIAMSON, in his individual capacity,

                Defendants.
------------------------------------------------------------x

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, Skyy Paul ("Plaintiff") through her counsel, SLATER SLATER SCHULMAN LLP, hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## NATURE OF CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), The New York City Human Rights Law ("NYCHRL"), and the New York State Human Rights Law ("NYSHRL"), and seeks damages to redress the injuries Plaintiff suffered as a result of being exposed to sexual discrimination, sexual harassment, a hostile work environment, retaliation, and wrongful termination/constructive discharge.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon this Court as this action involves a federal question under Title VII of the Civil Rights Act. The Court also has supplemental jurisdiction over the City and State causes of action.

3. Venue is proper in this District base upon Defendants' place of business being subject to personal jurisdiction within New York City, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PROCEDURAL PREREQUISITES

4. On or around November 19, 2021, Plaintiff filed a complaint with the EEOC against Defendant employer as set forth herein.

5. On or about July 6, 2022, Plaintiff received a Right to Sue Letter from the EEOC.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

7. Plaintiff is a single female who resides in Manhattan within the State of New York.

8. Defendant Universal Protection Service, LLC d/b/a Allied Universal Security Systems (Hereinafter "Defendant," "Defendants," and "Allied") was and is a duly authorized domestic corporation doing business in the State of New York.

9. Upon information and belief, Defendant solicits business across 19 locations within the State of New York, with eight (8) locations in New York City.

10. Upon information and belief, Defendant derives substantial revenues from goods used or consumed or services rendered in the State of New York.

11. Defendant is also an "employer" within the meaning of the NYSHRL.

12. Defendant is also an "employer" within the meaning of the NYCHRL.

13. Defendant Ricardo Rivera (Hereinafter "Defendant," "Defendants," and "Rivera") was and is a supervisor for Defendant Allied.

14. Upon information and belief, Defendant Rivera has hire and fire authority over Defendant Allied personnel.

15. At all times material, Defendant Rivera had supervisory authority over Plaintiff.

16. Defendant Lionel McLaughlin (Hereinafter "Defendant," "Defendants," and "McLaughlin") was and is a supervisor at Defendant employer.

17. At all relevant times, Defendant McLaughlin was and is a supervisor for Defendant Allied.

18. Upon information and belief, Defendant McLaughlin has hire and fire authority of Defendant Allied's personnel.

19. At all times material, Defendant McLaughlin had supervisory authority over Plaintiff.

20. Defendant Ray Corchabo (Hereinafter "Defendant," "Defendants," and "Corchabo") was and is a supervisor for Defendant Allied.

21. Upon information and belief, Defendant Corchabo has hire and fire authority over Defendant Allied personnel.

22. At all times material, Defendant Corchabo had supervisory authority over Plaintiff.

23. At all relevant times, Defendant Corchabo was Defendant employer's supervisor.

24. Defendant Paul Williamson (Hereinafter "Defendant," "Defendants," and "Williamson") was and is a supervisor for Defendant Allied.

25. Defendant Williamson was and is Defendant Allied's Supervisor of Security Guards.

26. Upon information and belief, Defendant Williamson has hire and fire authority over Defendant Allied personnel.

27. At all times material, Defendant Williamson had supervisory authority over Plaintiff.

28. At all relevant times, Defendant Williamson was and is a supervisor for Defendant Allied.

29. Defendants are also "employers" within the meaning of the NYSHRL, NYCHRL, and Title VII.

30. Plaintiff is an "employee" within the meaning of the NYSHRL, NYCHRL, and Title VII.

**FACTS**

31. At all times relevant, Ms. Paul ("Plaintiff") resides in New York County and is an individual female.

32. At all times herein mentioned, Allied Universal Security Systems AKA Universal Protection Service, LLC ("Defendant," "Defendants," and "Allied") was and still is a domestic business corporation organized and existing by the virtue of the laws of the State of New York.

33. At all times herein mentioned, Defendant Allied was and is a company providing security guard services.

34. On or about September 2020, Defendant employer interviewed Plaintiff. At the interview, Plaintiff was hired as a security guard and was assigned to work at The Marcel at Gramercy located at 201 East 24th Street, Gramercy, NY 10010.

35. Plaintiff was paid $17.25 an hour.

36. Plaintiff's direct supervisors were Defendants Rivera and McLaughlin.

37. Plaintiff received sexual harassment training and received an employee handbook.

38. Plaintiff worked without issue until she was promoted in or about October 2020 to the residential aide position.

39. Upon promotion, Plaintiff sat closer to Defendant Supervisor Rivera and had more interaction with him, and as a result, began to experience sexual harassment at every shift.

4

40. Defendant's Supervisor Defendant Rivera and Defendant's Supervisor Defendant McLaughlin subjected Plaintiff to a barrage of sexual comments, objectified her, and leered at her body.

41. At every shift, Defendant's Supervisor Defendant Rivera made inappropriate and sexual comments to Plaintiff.

42. Defendant's Supervisor Defendant Rivera told Plaintiff that his penis had both "length and girth."

43. At every shift, Defendant's Supervisor Defendant Rivera spoke about his sex life to Plaintiff.

44. On one occasion, Defendant's Supervisor Defendant Rivera told Plaintiff he "can last for hours in bed with women."

45. Defendant's Supervisor Defendant Rivera also told Plaintiff, "All the girls in the dorm knew who I was" in reference to his claims that he slept with many women while in college.

46. These unsolicited comments made Plaintiff feel uncomfortable and disgusted.

47. The harassment did not stop.

48. At every shift, Defendant's Supervisor Defendant Rivera leered at Plaintiff's body.

49. On one occasion, Defendant's Supervisor Defendant Rivera came up behind Plaintiff while she was sitting at her desk.

50. Defendant's Supervisor Defendant Rivera then violently shook her chair, causing her breasts to move rapidly.

51. Defendant's Supervisor Defendant Rivera then stared at Plaintiff's chest and laughed.

52. Plaintiff had to grab her chest and ground herself in her chair to stop Defendant's Supervisor Defendant Rivera.

53. Plaintiff repeatedly told Defendant's Supervisor Defendant Rivera to stop.

54. This incident caused Plaintiff to feel extremely humiliated and degraded.

55. The harassment did not stop.

56. Defendant's Supervisor Defendant Rivera also made sexual comments about Plaintiff's body in front of other coworkers.

57. Defendant's Supervisor Defendant Rivera asked Plaintiff, "What [bra] size are you?" and when Plaintiff did not answer, Defendant's Supervisor Defendant Rivera said to the other two female employees present, that he should give attention to their breasts as well.

58. In front of other co-workers, Defendant's Supervisor Defendant Rivera asked Plaintiff how much she would charge to have sex with him and then asked her how long she can last in bed.

59. The harassment did not stop.

60. On one occasion, Plaintiff was conducting a security walk with Defendant's Supervisor Defendant Rivera.

61. Once they were alone together, Defendant's Supervisor Defendant Rivera told Plaintiff how much he pays "for his women." He then told Plaintiff he would give her the same amount if she slept with him.

62. These inappropriate comments made Plaintiff feel extremely uncomfortable.

63. The harassment continued.

64. Plaintiff also witnessed Defendant's Supervisor Defendant Rivera harass other female employees.

65. On one occasion, Defendant's Supervisor Defendant Rivera made a negative comment about another female employee's body and Plaintiff defended her.

66. Defendant's Supervisor Defendant Rivera responded to Plaintiff, "The other women don't look like you- you have a flat stomach and a shapely figure."

67. Plaintiff felt uncomfortable when Defendant's Supervisor Defendant Rivera said this about her body.

68. Defendant's Supervisor Defendant Rivera would compare the female employees' bodies in front of other female employees.

69. Defendant's Supervisor Defendant Rivera's unsolicited sexual comments and actions created a toxic work environment comprised of resentment and discomfort among the female employees.

70. Despite Plaintiff's consistent pleas to Defendant's Supervisor Defendant Rivera to stop harassing her and the female employees, the harassment continued.

71. Defendant's Supervisor Defendant McLaughlin also sexually harassed Plaintiff. Every time Defendant's Supervisor Defendant McLaughlin saw Plaintiff, he made sexual comments to her.

72. Defendant's Supervisor Defendant McLaughlin consistently flirted with Plaintiff and asked her out on dates.

73. Plaintiff denied Defendant McLaughlin's propositions on every occasion.

74. Defendant's Supervisor Defendant McLaughlin's comments made Plaintiff feel extremely uncomfortable and objectified.

75. Defendant's Supervisor Defendant McLaughlin never made sexual comments to male employees.

76. The harassment did not stop.

77. Defendant's Supervisor Defendant Rivera and Defendant's Supervisor Defendant McLaughlin discussed Plaintiff's appearance together.

78. Specifically, Defendant's Supervisors Defendant Rivera and Defendant McLaughlin spoke about how they favored women with large buttocks and how they liked Plaintiff's buttocks.

79. Plaintiff regularly complained to Defendant's Supervisors Rivera and McLaughlin, asking them to stop sexually harassing her.

80. As such, Defendants had knowledge of the sexual harassment, gender discrimination, and hostile work environment.

81. The harassment did not stop.

82. Defendant's supervisor Defendant Corchabo also sexually harassed Plaintiff.

83. Defendant's Supervisor Defendant Corchabo regularly worked the shift before Plaintiff.

84. Defendant's Supervisor Defendant Corchabo made sexual comments to Plaintiff almost every time they interacted.

85. Whenever Plaintiff arrived at work, Defendant's Supervisor Defendant Corchabo would comment about the buttocks of the two female security guards that worked his shift. Defendant's Supervisor Defendant Corchabo also told Plaintiff how he liked their "large" buttocks.

86. On one occasion, Defendant's Supervisor Defendant Corchabo told Plaintiff, "I like to watch you go," indicating that he liked to watch her buttocks move from behind.

87. Plaintiff told Defendant's Supervisor Defendant Corchabo not to make comments like that.

88. Defendant's Supervisor Defendant Corchabo made Plaintiff feel extremely uncomfortable and violated.

89. Defendant's Supervisor Defendant Corchabo never made any sexual or inappropriate comments to male employees.

90. The harassment did not stop.

91. Defendant's Supervisor of Security Guards Defendant Williamson also sexually harassed Plaintiff.

92. On one occasion, Plaintiff needed a uniform shirt and Defendant's Supervisor Defendant Williamson was the only one with access to the room with the uniforms.

93. Defendant's Supervisor Defendant Williamson took Plaintiff to the room and proceeded to give Plaintiff a shoulder massage.

94. Plaintiff protested and said she did not want a shoulder massage.

95. Despite Plaintiff's objection, Defendant's Supervisor Defendant Williamson continued to massage Plaintiff.

96. Due to the hostile work environment created by Defendant's Supervisors' consistent sexual harassment and gender discrimination, Defendants forced Plaintiff to resign on or about February 13, 2021.

97. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

98. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income the loss of salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

99. Plaintiff has further experienced severe emotional and physical distress.

100. Upon information and belief, the discrimination will continue after the date of this complaint and Plaintiff hereby makes a claim for all continuing future harassment.

101. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages against the Defendants.

102. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

103. The above are just some examples, of some of the discrimination to which Defendants subjected Plaintiff.

104. Defendants exhibited a pattern and practice of discrimination.

### AS AND FOR THE FIRST CAUSE OF ACTION UNDER TITLE VII
*(Not Against Any Individual Defendants)*

105. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

106. Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

107. At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

108. Defendant created and maintained a hostile work environment based on sex and sexual harassment.

109. But for Plaintiff's sex, Plaintiff would not have been discriminated against and sexually harassed.

110. Defendant's unlawful acts were intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

111. As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in forms including, but not limited to, lost income, lost future earnings, and severe emotional distress, mental anguish, pain, and suffering.

## AS AND FOR A SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

112. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

113. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

"For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

114. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling, and coercing the discriminatory conduct.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER NEW YORK STATE LAW

115. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

116. Executive Law § 296 provides that:

"1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from

employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

117. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff through gender/sex/sexual discrimination, hostile work environment based on sex, sexual harassment.

118. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

## AS AND FOR A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY LAW

119. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

120. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

121. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her gender/sex discrimination, sexual harassment, and creating a hostile work environment.

122. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

123. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

124. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel, or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

125. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

126. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

127. The New York City Administrative Code Title 8, §8-107 (1) e provides that it shall be unlawful discriminatory practice: "For an employer to discharge or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter."

128. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107 (1) e by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE SUPERVISORY LIABILITY

129. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

130. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent, or independent contractor provides:

"An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: the employee or agent exercised managerial or supervisory responsibility; or the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

131. Defendants violated the above section as set forth herein.

## JURY DEMAND

The Plaintiff demands that the foregoing causes of action be tried before a jury.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, demands judgment against Defendants in an amount to be determined at trial plus interest, including, but not limited to, all emotional distress, back pay and front pay, punitive damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: August 2, 2022
       Melville, NY 11747

                                  SLATER SLATER SCHULMAN LLP

                                  */s/ John C. Luke, Jr.*
                                  John C. Luke, Jr.
                                  445 Broad Hollow Road, Suite 419
                                  Melville, NY 11747
                                  *Attorneys for Plaintiff*

## **DEMAND TO PRESERVE EVIDENCE**

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, computer databases, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.